*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-302

DECEMBER TERM, 2015

| | |
|---|---|
| In re K.L. and Z.M., Juveniles | } APPEALED FROM:<br>}<br>} Superior Court, Chittenden Unit,<br>} Family Division<br>}<br>} DOCKET NOS. 359/360-12-13 Cnjv |

Trial Judge: Samuel Hoar, Jr.

In the above-entitled cause, the Clerk will enter:

Father appeals termination of his parental rights to his children K.L. and Z.M., born in December 2010 and March 2013, respectively. Father argues that the trial court erred by not understanding the procedural posture of the case, failing to properly consider parent's constitutional rights, and improperly evaluating two of the statutory best-interests factors. We affirm.

In December 2013, the Department for Children and Families (DCF) filed a petition alleging that K.L. and Z.M. were children in need of care or supervision (CHINS). Among the concerns prompting the petition were parents' unaddressed mental health and anger management issues, and lack of skills to properly nurture and care for the children. The children were initially placed with parents under a conditional care order, but the court transferred temporary custody to DCF after finding that parents failed to comply with the conditional order by refusing to participate in parenting classes and or engage with providers to address their health and mental health needs. Following a contested hearing, the court adjudicated the children as CHINS in August 2014 for lack of proper parental care. The court concluded by clear and convincing evidence that the children had been neglected by their parents. Among the findings were that parents' shouting, fighting, and drug use in the presence of the children had created a violent atmosphere inappropriate for the children's wellbeing; that the parents neglected the children's dental hygiene; that Z.M. was confined to her swing for excessive periods and was not properly nurtured; and that father did not show concern for K.M.'s physical pain during diaper changing.

Until October 2014, the parents had visits with the children. Following a visit in October, father became angry after a conversation with a DCF social worker and addressed her with profanity. He also screamed and swore at the security guard who attempted to speak with him. He did this in front of the children. Thereafter, DCF had a no-trespass order served on father. Following a hearing, the court issued an order suspending father's parent-child contact until father submitted to a mental health assessment and followed through on recommended treatment. Father refused to cooperate, and at the time of the final order in July 2015, father had not seen his children for ten months.

Neither parent participated in recommended mentalhealth assessments. They did not engage in individual or couples counseling. Father did not accept responsibility for how his actions affected the children.

In December 2014, DCF filed to terminate parental rights at the initial disposition hearing. The court held a two-day termination hearing. The court concluded that termination was in the children's best interests based on the following findings. Due to parent's practice of propping bottles in the children's mouths, both children had serious dental issues. Parents left Z.M. for long periods of the day in a car seat or swing facing the television. Father was assessed as cannabis-dependent, but refused to follow the advice of his health care providers to address this addiction. Parents both have anger issues and fought regularly in front of the children. Parents have demonstrated a lack of concern about these issues and shown a lack of insight into how their behaviors affect the children. Both children have suffered as a result of the parents' deficits and refusal to address those issues. Both children have global delays in development; and K.L. has self-regulation issues, is impulsive and has anxiety issues. The children are "flourishing" in the care of their foster mother. In weighing the statutory factors, the court concluded that all weighed in favor of termination. The court found that parents did not play a constructive role in the children's lives, had not seen the children for ten months, except for one visit by mother, and would be unable to resume parental duties in a reasonable period of time. Father appeals.

The family court may terminate parental rights at the initial disposition proceeding if the court finds by clear and convincing evidence that termination is in the child's best interests. In re J.T., 166 Vt. 173, 177, 179 (1997). In assessing the child's best interests, the court must consider the statutory criteria. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable period of time. In re J.B., 167 Vt. 637, 639 (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. In re A.F., 160 Vt. 175, 178 (1993).

On appeal, father first argues that the family court did not understand the procedural posture of the proceeding. According to father, when the court stated "We're not here for a disposition hearing. . . . we're here on a TPR," this indicated that the court did not understand that termination is a type of disposition and other disposition options existed. There was no error. Despite the court's comment at the hearing, it is evident from the court's written order that the court correctly expressed the posture of the case. The court properly noted that when termination is sought at initial disposition the court must consider whether termination is in the child's best interests. See 33 V.S.A. § 5114(a) (setting forth best-interests factors to be considered any time petition to terminate parental rights is filed); id. § 5318(a)(5) (listing termination as option at disposition). The court then applied that standard.

Father contends that the court had discretion to consider the other disposition options in the statute and erred in failing to consider those options. Again, there was no error. Having determined that termination was in the children's best interests, the court was not required to discuss other options presented in the statute. See In re T.T., 2005 VT 30, ¶ 7, 178 Vt. 496 (mem.) (explaining that once court determines termination is in child's best interest, it is not required to "revisit the permanency hearing options . . . and explain why it is choosing termination of parental rights over other options").

Father also argues that the court did not understand the constitutional rights at stake in the proceeding. Father relies on the following statement included in the court's order: "In determining the child's best interests, our Supreme Court has made clear that 'the best interest of the child has always been regarded as superior to the right of parental custody.' " According to father, this demonstrates that the court did not give the proper weight to parents' fundamental right to parent their child. There was no error. The court's statement indicates that the court recognized that parents have a fundamental right, but also correctly acknowledged that this right is not absolute and will give way when there is clear and convincing evidence that termination of parental rights is in the children's best interests. See In re B.M., 165 Vt. 331, 341-42 (1996) (stating that constitution requires clear and convincing evidence to terminate parental rights and acknowledging public policy does not require "that the parent-child bond be maintained regardless of the cost to the child" (quotation omitted)). Here, there was no violation of father's right to parent because the court terminated his rights based on clear and convincing evidence that such action was in his children's best interests.

Finally, father argues that the court's best-interests analysis of the final two statutory factors was flawed. Father contends the court erred in concluding that parents would not be able to resume parental duties in a reasonable period of time, see 33 V.S.A. § 5114(a)(3), because the court did not identify what a reasonable period of time was in this case.

The reasonableness of the time period must be measured from the child's perspective, In re B.M., 165 Vt. 331, 337 (1996), and may take account of the child's young age or special needs, In re J.S., 168 Vt. 572, 574 (1998) (mem.). Here, the court adequately addressed the reasonableness of the time period. The court explained that due to uncertainty about parents' housing situation and their marital relationship, in addition to the unaddressed mental-health and parenting needs, any reunification plan would require a transitional period of "indefinite duration." The court found this amount of time was not a "reasonable period." Given the young age of the children—four and two at the time of the final hearing—and the children's developmental delays and needs, it was entirely within the court's discretion to conclude that the indefinite period needed by parents to resume parenting was not reasonable from the children's perspective.

Father also argues that the court erred in evaluating the final factor, which directs the court to consider: "Whether the parent has played and continues to play a constructive role, including personal contact and demonstrated emotional support and affection, in the child's welfare." 33 V.S.A. § 5114(a)(4). Father contends that the court abused its discretion by considering parents' role solely in a custodial context because he alleges this approach turned the consideration of this factor into a mere reconsideration of the third factor and meant the court failed to consider parents' contribution to the children's lives outside of a custodial setting.

We conclude that the court did not abuse its discretion in considering this factor. The court found that parents' role in the children's lives when the children were in parents' custody was not positive insofar as parents did not meet their needs and lacked insight into how their actions affected the children. The court explained that due to parents' unaddressed deficiencies and "unwillingness to confront and address them, the prospect of their playing a constructive role as full-time parents is dim." This conclusion was not erroneous simply because the analysis on which it was based overlapped to some degree on the court's analysis of parents' ability to resume parental duties in a reasonable period of time. Further, when all of the court's findings are viewed in their entirety, it is evident that the court considered parents' role in the children's

3

lives in a noncustodial role.  In this context, the court noted that neither parent had had regular visits with the children for ten months and had failed to take responsibility for how their actions affected the children.

In sum, the court properly considered each of the statutory factors, and its findings on these factors support the court's conclusion that termination of parental rights was in the children's best interests.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

4